ACCEPTED
15-24-00114-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
9/24/2025 4:30 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-24-00114-CV

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
9/24/2025 4:30:05 PM
CHRISTOPHER A. PRINE
Clerk

IN THE COURT OF APPEALS FOR THE FIFTEENTH DISTRICT OF TEXAS

CECILE ERWIN YOUNG, IN HER OFFICIAL CAPACITY AS EXECUTIVE
COMMISSIONER OF THE TEXAS HEALTH AND HUMAN SERVICES COMMISSION,
MOLINA HEALTHCARE OF TEXAS, INC., AND AETNA BETTER HEALTH OF
TEXAS, INC.
*Appellants,*

v.

COOK CHILDREN'S HEALTH PLAN, TEXAS CHILDREN'S HEALTH PLAN,
SUPERIOR HEALTHPLAN, INC., AND WELLPOINT INSURANCE COMPANY,
*Appellees.*

On Appeal from the 455th Judicial District Court, Travis County, Texas
Cause No. D-1-GN-24-003839

RULE 29.3 REPLY OF APPELLEES
COOK CHILDREN'S HEALTH PLAN AND TEXAS CHILDREN'S HEALTH PLAN

TABLE OF CONTENTS

Summary ........................................................................................... 1

Argument ......................................................................................... 5

    I.     The Court has jurisdiction to order temporary relief. ......................... 5

         A.      Rule 29.3 provides a clear mechanism for relief. ..................... 5

         B.      The Court can grant relief under its original jurisdiction and inherent authority because of the risk of mootness. .......... 11

    II.     The Children's Plans' claims are ripe. .............................................. 12

    III.    Exhaustion of administrative remedies is not required when asserting *ultra vires* claims. ................................................................ 16

    IV.    The Children's Plans did not waive their *ultra vires* claims by failing to object to the terms of the procurement's solicitation. ........ 20

    V.     The Children's Plans seek only to halt unlawful conduct, not to compel the Commissioner to redo the procurement. .......................... 21

    VI.    The Commissioner's procurement is violating statutory and regulatory mandates—and she will continue to commit *ultra vires* acts. .................................................................................................. 23

         A.      The record shows the Commissioner is disregarding legal requirements, which is not within her discretion. .................... 24

         B.      The Children's Plans have standing. ........................................ 26

         C.      The Commissioner's exhaustion-of-remedies argument remains fundamentally misguided. ........................................... 28

         D.      The record shows the Commissioner has failed to comply with multiple statutory and regulatory mandates. .................... 30

             1.     The Commissioner has not complied with section 2155.144 when determining "best value." ..................... 30

2. The Commissioner has failed to consider provider networks and quality initiatives as required by law. ..... 34

3. The Public Information Act did not compel the wrongful disclosure of proposals. .................................. 37

4. The Commissioner has disregarded other procurement requirements. ............................................ 38

VII. The Children's Plans and their members will be irreparably harmed if the temporary injunction is not continued pending the final disposition of this appeal. ......................................................... 39

VIII. The balance of the equities strongly supports continuing the temporary injunction pending the final disposition of this appeal. ..................................................................... 43

Conclusion ............................................................................... 48

Certificate of Service ............................................................... 51

**Page(s)**

**Cases**

*Abbott v. Doe*,
691 S.W.3d 55 (Tex. App.—Austin 2024, no pet.) .......................................... 13

*Abbott v. Doe*,
No. 03-22-00126-CV, 2022 WL 837956 (Tex. App.—Austin
Mar. 21, 2022, no pet.) ................................................................................ 8, 9

*Adarand Constructors, Inc. v. Peña*,
515 U.S. 200 (1995) ........................................................................................ 27

*Brennan v. City of Willow Park*,
376 S.W.3d 910 (Tex. App.—Fort Worth 2012, pet. denied) .......................... 17

*Cash Am. Int'l Inc. v. Bennett*,
35 S.W.3d 12 (Tex. 2000) ............................................................................... 17

*Chambers-Liberty Cntys. Navigation Dist. v. State*,
575 S.W.3d 339 (Tex. 2019) ........................................................................... 44

*City of Anson v. Harper*,
216 S.W.3d 384 (Tex. App.—Eastland 2006, no pet.) ..................................... 14

*City of Austin v. Util. Assocs., Inc.*,
517 S.W.3d 300 (Tex. App.—Austin 2017, pet. denied) ........................... 21, 25

*City of El Paso v. Heinrich*,
284 S.W.3d 366 (Tex. 2009) .............................................................. 10, 15, 23

*Coyne-Delany Co. v. Cap. Dev. Bd.*,
616 F.2d 341 (7th Cir. 1980) ............................................................................ 9

*Dubai Petroleum Co. v. Kazi*,
12 S.W.3d 71 (Tex. 2000) .......................................................................... 17, 18

*EIS Dev. II, LLC v. Buena Vista Area Ass'n*,
715 S.W.3d. 689 (Tex. 2025) .......................................................................... 21

*Elcon Enters., Inc. v. Wash. Metro. Area Transit Auth.*,
   977 F.2d 1472 (D.C. Cir. 1992)................................................................ 27

*Hall v. McRaven*,
   508 S.W.3d 232 (Tex. 2017) ............................................................... 25, 32

*Harley Channelview Props., LLC v. Harley Marine Gulf, LLC*,
   690 S.W.3d 32 (Tex. 2024) ..................................................................... 8

*Hensley v. State Comm'n on Jud. Conduct*,
   692 S.W.3d 184 (Tex. 2024) ................................................................... 19

*Hous. Belt & Terminal Ry. Co. v. City of Houston*,
   487 S.W.3d 154 (Tex. 2016) ............................................................. 20, 24

*In re Abbott*,
   645 S.W.3d 276 (Tex. 2022) (orig. proceeding) ............................................ 6, 9

*In re Geomet Recycling LLC*,
   578 S.W.3d 82 (Tex. 2019) (orig. proceeding) ............................................ 5, 10

*In re Newton*,
   146 S.W.3d 648 (Tex. 2004) (orig. proceeding) ............................................. 43

*In re Oncor Elec. Delivery Co.*,
   630 S.W.3d 40 (Tex. 2021) ..................................................................... 19

*In re State*,
   711 S.W.3d 641 (Tex. 2024) (orig. proceeding) .................................... 7, 8, 44

*In re Stetson Renewables Holdings, LLC*,
   658 S.W.3d 292 (Tex. 2022) (orig. proceeding) ............................................. 22

*In re Tex. Educ. Agency*,
   619 S.W.3d 679 (Tex. 2021) (orig. proceeding) ............................................. 45

*Kilgore Indep. Sch. Dist. v. Axberg*,
   535 S.W.3d 21 (Tex. App.—Texarkana 2017, no pet.)...................................... 17

*Lazarides v. Farris*,
   367 S.W.3d 788 (Tex. App.—Houston [14th Dist.] 2012, no pet.)................... 28

iv

*Lutheran Church-Mo. Synod v. Concordia Univ. of Tex.*,
No. 03-25-00342-CV, 2025 WL 1942540 (Tex. App.—Austin
July 16, 2025, no pet. h.) ................................................................ 6

*Marble Falls Indep. Sch. Dist. v. Scott*,
275 S.W.3d 558 (Tex. App.—Austin 2008, pet. denied) ................................ 14

*Masters v. Voe*,
No. 03-22-00420-CV, 2022 WL 4359561 (Tex. App.—Austin
Sept. 20, 2022, no pet.) .................................................................. 7

*Morath v. Kingsville Indep. Sch. Dist.*,
710 S.W.3d 918 (Tex. App.—15th Dist. 2025) ........................................ 22

*Parsons v. Galveston Cnty. Emps. Credit Union*,
576 S.W.2d 99 (Tex. App.—Houston [1st Dist.] 1978, orig.
proceeding) ............................................................................... 11

*Patel v. Tex. Dep't of Licensing & Regulation*,
469 S.W.3d 69 (Tex. 2015) .......................................................... 13, 41

*Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*,
971 S.W.2d 439 (Tex. 1998) ............................................................ 14

*Paxton v. Garza*,
No. 15-25-00116-CV (Tex. App.—15th Dist. July 17, 2025) ............................ 5

*Perkins v. Lukens Steel Co.*,
310 U.S. 113 (1940) ...................................................................... 9

*Perry v. Del Rio*,
66 S.W.3d 239 (Tex. 2001) .............................................................. 15

*Riner v. City of Hunters Creek*,
403 S.W.3d 919 (Tex. App.—Houston [14th Dist.] 2023, no pet.) .................... 14

*S.C. v. M.B.*,
650 S.W.3d 428 (Tex. 2022) ............................................................ 18

*State v. City of San Marcos*,
714 S.W.3d 224 (Tex. App.—15th Dist. 2025, pet. filed) .............................. 43

*State v. Harris County*,
No. 15-24-00120-CV (Tex. App.—15th Dist. Dec. 6, 2024) ........................... 11

*State v. Hollins*,
620 S.W.3d 400 (Tex. 2020) ..................................................................... 44

*Tex. Dep't of Protective & Regul. Servs. v. Mega Child Care, Inc.*,
145 S.W.3d 170 (Tex. 2004) ..................................................................... 18

*Tex. Dep't of State Health Servs. v. Holmes*,
294 S.W.3d 328 (Tex. App.—Austin 2009, pet. denied) ................................. 8

*Tex. Educ. Agency v. A+ Tex. Teachers*,
No. 03-23-00318-CV, 2023 WL 4981604 (Tex. App.—Austin
Aug. 4, 2023, no pet.) .............................................................................. 7

*Tex. Educ. Agency v. Hous. Indep. Sch. Dist.*,
609 S.W.3d 569 (Tex. App.—Austin 2020, no pet.) ....................................... 10

*Tex. Educ. Agency v. Cypress-Fairbanks Indep. Sch. Dist.*,
830 S.W.2d 88 (Tex. 1992) .................................................................. 18, 19

*Texas v. Biden*,
10 F.4th 538 (5th Cir. 2021) ..................................................................... 44

*Tinton Falls Lodging Realty, LLC v. United States*,
800 F.3d 1353 (Fed. Cir. 2015) ................................................................. 26

*VAS Realty, LLC v. United States*,
26 F.4th 945 (Fed. Cir. 2022) ................................................................... 26

*Webster v. Comm'n for Lawyer Discipline*,
704 S.W.3d 478 (Tex. 2024) ..................................................................... 14

*Westheimer Indep. Sch. Dist. v. Brockette*,
567 S.W.2d 780 (Tex. 1978) ..................................................................... 20

*Wilson v. Cmty. Health Choice Tex., Inc.*,
607 S.W.3d 843 (Tex. App.—Austin 2020, pet. denied) .......................... *passim*

**Statutes**

TEX. GOV'T CODE § 22.221(a) ................................................................. 11

TEX. GOV'T CODE § 533.003(a)(1) ................................................................. 35

TEX. GOV'T CODE § 533.003(a)(3) ................................................................. 38

TEX. GOV'T CODE § 536.052(d) ..................................................................... 35

TEX. GOV'T CODE § 552.104(a) ...................................................................... 37

TEX. GOV'T CODE § 2155.144(c) ............................................................. 30, 32

TEX. GOV'T CODE § 2155.144(d) .................................................................. 32

TEX. GOV'T CODE § 2155.144(d)(5) ............................................................. 30

TEX. GOV'T CODE § 2155.144(n) ................................................................... 35

## Other Authorities

1 TEX. ADMIN. CODE § 391.303(d) ............................................................... 18

34 TEX. ADMIN. CODE § 20.208(d)(3) ........................................................... 38

TEX. R. APP. P. 29.3 ............................................................................. *passim*

## SUMMARY

The purpose of Rule 29.3 is to preserve the status quo and protect the parties' rights while an appeal proceeds. As an injunction, traditional factors control the inquiry—principally, relative harms and equities and a preliminary examination of the merits to avoid unjust outcomes. While the Commissioner and Molina both acknowledge that well-established standard at the outset of their respective oppositions, neither pays it much heed. Instead, both largely sidestep the traditional considerations in favor of brand-new arguments seeking to limit the scope of the rule, this Court's appellate jurisdiction, and this Court's—or *any* court's—ability to review the Commissioner's actions in a procurement. They essentially argue the Commissioner should be above the law and the largest procurement in Texas history should be immune from any judicial scrutiny, even if—as the trial court found—the procurement is *defying* Texas law. This novel and misguided attempt to divert the Court's attention is understandable given that the record overwhelmingly supports the trial court's conclusion that the Children's Plans are likely to succeed on the merits and would, along with 1.5 million Medicaid members across the state, suffer irreparable harm if the procurement is allowed to continue.

The Commissioner relegates her discussion of the equities to the end of her opposition, and even then ignores the ample record of harms to Medicaid beneficiaries and the Children's Plans and makes only vague and unsubstantiated

1

assertions about "serious consequences to the state" from delaying the procurement—a position belied by the lack of supporting record citations (because there are none), the fact that HHSC has previously canceled prior procurements and already agreed to delays in this procurement, and the absence of any such "serious consequences" during the last fourteen months while the procurement has been paused.

The Commissioner's merits arguments largely avoid the record as well. No wonder: As the trial court found and the Children's Plans detailed in their motion, the evidence clearly demonstrates that the Commissioner's conduct of the procurement has unlawfully disregarded numerous statutory requirements. Indeed, the evidence shows that the Commissioner could ***not*** have complied with those mandates given how she ultimately implemented the procurement.

This statutory defiance is no small matter. For example, Texas law requires consideration of how well bidders have actually provided services to Medicaid beneficiaries—as opposed to rewarding promises about ***future*** services, which is what the Commissioner has done in this procurement. Disregarding that mandate has produced an absurd result: a notice of award that excludes the Children's Plans, despite their long records providing superior-quality services to their members through uniquely integrated healthcare systems, while simultaneously providing Molina significantly more service areas in which to operate, despite HHSC's recent

assessment that Molina "does not meet the quality of care measure minimum performance standards in *any* of the programs it operates in." 5.RR.262 (emphasis added).

Rather than engage with that reality or the record, the Commissioner and Molina dodge both and present brand-new arguments on ripeness and exhaustion that all fail for the same reason—they are based on mischaracterizations of this litigation. The Children's Plans claims are ripe and do not require exhausting administrative remedies because they are *ultra vires* claims to prevent ongoing unlawfulness—not claims for judicial review of an already-completed agency action. Nor were the Children's Plans required to protest the terms of the solicitation before the procurement began because their *ultra vires* claims are based on the Commissioner's subsequent, unanticipated violations of the very laws she promised to follow. And the Children's Plans do not ask the judiciary to compel a redo of the procurement but seek only to prevent further unlawful action.

Molina goes even further than the Commissioner to distract from the proper inquiry under Rule 29.3, ignoring entirely the most important considerations— harms and equities—and largely avoiding discussion of the merits. Molina instead argues for unprecedented limits on appellate courts' broad power under Rule 29.3 and their inherent authority that would handcuff this Court's ability to grant necessary temporary relief in this case and elsewhere. Molina's unyielding self-

interest also leads it to make arguments that go far beyond where the Commissioner dares tread by, for example, arguing that this case cannot become moot even if the Commissioner executes the contracts at issue—a position the Commissioner herself shies away from, likely because her predecessor recently argued that a similar case became moot upon contract execution.

In the end, the Commissioner's desire for unchecked authority over HHSC's actions and Molina's desire to grow its market share and profit notwithstanding the illegality of this procurement cause them to largely ignore the most important factor in the Rule 29.3 analysis: how this illegal procurement will force 1.5 million of some of Texas's most vulnerable residents to switch healthcare plans and providers, with devastating impact to the quality and continuity of care they are currently receiving. Instead, the Commissioner and Molina coldly brush that reality aside with the observation that people on Medicaid can and sometimes do choose to switch plans— as if being forced to change health plans due to an unlawful procurement is the same as making that choice voluntarily. Preventing those irreparable harms alone provides more than sufficient justification for granting Rule 29.3 relief.[1]

---

[1] The Children's Plans acknowledge this reply brief is longer than typical. The length results from the need to address two different response briefs that each raises several threshold jurisdictional arguments not raised before the trial court (and, consequently, that the Children's Plans could not have known to address in their initial motion). Given the stakes—these brand-new arguments are presented as

4

## I.     The Court has jurisdiction to order temporary relief.

Contrary to Molina's strained and hypertechnical arguments, *see* Molina Resp. 11-23, the Court has multiple avenues to grant temporary relief and either continue the trial court's temporary injunction or enter a similar injunction during the pendency of this appeal.

### A.     Rule 29.3 provides a clear mechanism for relief.

Rule 29.3 "broadly empower[s] the court of appeals to preserve parties' rights when necessary" and "gives an appellate court great flexibility in preserving the status quo based on the unique facts and circumstances presented." *In re Geomet Recycling LLC*, 578 S.W.3d 82, 89 (Tex. 2019) (orig. proceeding). "Depending on the circumstances, this rule allows a court of appeals to preserve the parties' rights even if the temporary order has 'the same practical effect as denying supersedeas of the trial court's injunction.'" Order at 2, *Paxton v. Garza*, No. 15-25-00116-CV (Tex. App.—15th Dist. July 17, 2025) (https://search.txcourts.gov/SearchMedia.aspx?MediaVersionID=e5514f08-1990-406e-af3d-a711025f1fa8&coa=coa15&DT=Order&MediaID=84197a00-8b78-

---

dispositive, and denial of the motion would threaten the Children's Plans' continued existence—a comprehensive rebuttal is necessary.

[4c8d-bfe0-dc961e0e10cf](#) (quoting *In re Abbott*, 645 S.W.3d 276, 282 (Tex. 2022) (orig. proceeding)).

Notwithstanding Rule 29.3's expansive scope—evidenced by the various equitable objectives it can be employed to serve[2]—Molina argues for a significant limitation unsupported by Texas caselaw. Molina's argument is premised on its overreading of the word "rights" in Rule 29.3, which allows the Court to "make any temporary orders necessary to preserve the parties' rights until disposition of the appeal." Seizing on that term, Molina pivots to ***federal*** caselaw and contends that unsuccessful bidders have no "right" to a contract and, thus, Rule 29.3 cannot provide relief. Molina Resp. 16-21. The argument is flawed twice over.

First, Molina's novel interpretation of Rule 29.3 finds no support in caselaw. Molina identifies no Texas precedent for a threshold analysis of a litigant's underlying "rights" to assess the propriety of temporary relief. Nor could it. The point of Rule 29.3 is "to preserve the status quo and prevent irreparable harm to the parties during the pendency of the appeal." Children's Plans Mot. 14 (citation modified) (quoting *Abbott*, 645 S.W.3d at 282). Accordingly, the primary—and, sometimes, exclusive—inquiry undertaken by appellate courts is equitable,

---

[2] *See, e.g., Lutheran Church-Mo. Synod v. Concordia Univ. of Tex.*, No. 03-25-00342-CV, 2025 WL 1942540, at *1 (Tex. App.—Austin July 16, 2025, no pet. h.) (per curiam) (granting Rule 29.3 motion filed "to stay trial-court proceedings and this interlocutory appeal in the interests of comity and judicial economy, to protect the parties' rights, and to avoid potentially conflicting rulings").

assessing whether temporary relief is needed to prevent irreparable injury to the moving party. As the Third Court of Appeals explained,

> [w]e do not address the merits of the trial court's grant of the temporary injunction because to do so would be to prematurely decide this appeal without the benefit of full briefing from the parties. Instead, we conclude based on the record before us that reinstating the temporary injunction is necessary to preserve the parties' rights during the pendency of this appeal.

*Masters v. Voe*, No. 03-22-00420-CV, 2022 WL 4359561, at *4 (Tex. App.—Austin Sept. 20, 2022, no pet.); *see also, e.g.*, *Tex. Educ. Agency v. A+ Tex. Teachers*, No. 03-23-00318-CV, 2023 WL 4981604, at *3 (Tex. App.—Austin Aug. 4, 2023, no pet.) (awarding temporary relief to preserve party's rights "without commenting on the merits of any party's claims or defenses"). The Texas Supreme Court later noted, when considering Rule 52.10(b) in the context of Rule 29.3, that "***some*** consideration of the merits" is also appropriate when undertaking this equitable inquiry. *In re State*, 711 S.W.3d 641, 645 (Tex. 2024) (orig. proceeding) (emphasis added). Even then, however, Rule 29.3 requires only "a ***preliminary*** inquiry into the ***likely*** merits of the parties' legal positions. The merits need not—and often should not—be definitively determined at this preliminary stage." *Id.* (emphasis added).

In short, Rule 29.3 requires an appellate court to consider the equities and, to a lesser extent, the merits. This is an unremarkable conclusion. After all, Rule 29.3 is "a kind of injunction, so the familiar considerations governing injunctive relief in other contexts will generally apply in this context as well." *Id.*

7

If anything, the primary difference between Rule 29.3 and a temporary injunction in a trial court is that the merits inquiry is ***more relaxed*** here. *Compare id.* (Rule 29.3 requires only "a preliminary inquiry into the likely merits"), *with Harley Channelview Props., LLC v. Harley Marine Gulf, LLC*, 690 S.W.3d 32, 39 (Tex. 2024) (temporary injunction in trial court requires "a probable right to the relief sought"). This makes sense: The "preliminary inquiry" at this stage is meant only to avoid the decidedly inequitable result of "allowing a party who will ***very likely*** lose on the merits to interfere with the legal rights of the opposing party during the appeal." *State*, 711 S.W.3d at 645 (emphasis added).

Here, any inquiry—preliminary or searching—ultimately demonstrates that the Children's Plans are likely to succeed. Indeed, they have already met the higher merits burden applied before the trial court, which "reviewed the evidence and concluded that [the Children's Plans] had established a probable right to recovery on their claims,"[3] and this Court should in turn "conclude that reinstating the temporary injunction is necessary to maintain the status quo and preserve the rights of all parties." *Abbott v. Doe*, No. 03-22-00126-CV, 2022 WL 837956, at \*2 (Tex.

---

[3] To the extent the trial court's conclusion that the Children's Plans satisfied this requirement for a temporary injunction was based on factual determinations like witness credibility, it is entitled to substantial deference—including "review[ing] the evidence in the light most favorable to the trial court's order, [and] indulging every reasonable inference in its favor." *Tex. Dep't of State Health Servs. v. Holmes*, 294 S.W.3d 328, 332 (Tex. App.—Austin 2009, pet. denied).

App.—Austin Mar. 21, 2022, no pet.); *see also* CR.5875-79; *infra* pp. 23-39 (merits discussion).

Molina apparently believes Rule 29.3 requires consideration of something other than the equities and the merits. In claiming Rule 29.3 "can't supply authority for the injunction" sought, Molina Resp. 16, Molina does not address the equities at all, and its discussion of "rights" bears little resemblance to the Commissioner's discussion of the merits; the trial court's findings on the merits; or the Children's Plans' motion. *Compare id.* at 16-21, *with* Commissioner Resp. 20-41, CR.5878-84, and Children's Plans Mot. 19-41. Instead, Molina's argument is a digression about the term "rights" that departs from how this Court and other courts interpret and apply Rule 29.3. The rule does not "plainly limit[] the scope of the available relief" in the manner Molina suggests. Molina Resp. 16 (quoting *Abbott*, 645 S.W.3d at 282).[4]

Second, Molina's discussion of federal caselaw involving unsuccessful bidders' "rights" miscasts this litigation. Those cases involved claims for which a plaintiff's interest in or right to a contract was a necessary prerequisite. *See, e.g., Perkins v. Lukens Steel Co.*, 310 U.S. 113, 125 (1940); *Coyne-Delany Co. v. Cap. Dev. Bd.*, 616 F.2d 341, 343 (7th Cir. 1980). In contrast, the Children's Plans have

---

[4] Even this language from *Abbott* is taken out of context, as the "limit" referenced was merely a check on an appellate court's ability to provide relief to **non**parties. *Abbott*, 645 S.W.3d at 282-83.

not alleged contract-based claims or asserted a right to contracts. Instead, they seek to enjoin the Commissioner from continuing with an unlawful procurement, and the "rights" they assert are not contractual but rather "a private party's rights against a state official who has acted without legal or statutory authority." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 368 (Tex. 2009). Molina misses this mark entirely.

The merits inquiry under Rule 29.3 therefore hinges on whether the Commissioner has acted and likely will continue to act contrary to law. Because she has and indicated she will continue to do so, *see infra* pp. 23-39, and the Children's Plans and Medicaid beneficiaries will suffer irreparable harm, see *infra* pp. 39-43, Rule 29.3 relief is appropriate, *see Tex. Educ. Agency v. Hous. Indep. Sch. Dist.*, 609 S.W.3d 569, 578 (Tex. App.—Austin 2020, no pet.) (per curiam) ("[W]e conclude that under the particular circumstances presented here, where the appellee alleges irreparable harm from ultra vires action that it seeks to preclude from becoming final, to effectively perform our judicial function and to preserve the separation of powers, we must exercise our inherent authority and use Rule 29.3 to make orders 'to prevent irreparable harm to parties that have properly invoked [our] jurisdiction in an interlocutory appeal.'" (second alteration in original) (quoting *Geomet Recycling*, 578 S.W.3d at 90)).

**B.    The Court can grant relief under its original jurisdiction and inherent authority because of the risk of mootness.**

As Molina concedes, the Court "may grant [an original writ] to preserve the subject matter pending appeal and prevent the case from becoming moot." *Parsons v. Galveston Cnty. Emps. Credit Union*, 576 S.W.2d 99, 99 (Tex. App.—Houston [1st Dist.] 1978, orig. proceeding). Likewise, "[t]he Court has the inherent authority to issue orders necessary or proper to preserve its jurisdiction during the pendency of an appeal." Order at 2, *State v. Harris County*, No. 15-24-00120-CV (Tex. App.—15th Dist. Dec. 6, 2024) https://search.txcourts.gov/SearchMedia.aspx?MediaVersionID=997106f4-e0e4-4012-9193-cd243dcfb017&coa=coa15&DT=Order&MediaID=ab5e4979-f3fd-4515-8836-403bdcb5eed6). Here, if the Commissioner is not enjoined from proceeding with the procurement, she could sign and execute the tentatively awarded contracts and then argue mootness, as her predecessor did in similar circumstances. *See Wilson v. Cmty. Health Choice Tex., Inc.*, 607 S.W.3d 843, 848 (Tex. App.—Austin 2020, pet. denied) (prior commissioner "executed and officially awarded [announced procurement] contracts" in midst of *ultra vires* litigation and then asserted case was moot). The Children's Plans disagree their claims would be mooted if the contracts were executed, but any such prospect justifies the Court's action under its inherent authority and Texas Government Code section 22.221(a).

11

Molina's counterargument hinges on a single, erroneous premise: that "[t]here's no chance that this appeal will become moot before the Court has a chance to decide its merits." Molina Resp. 14. Tellingly, the Commissioner does **not** make that assertion. And it's not hard to see why: She has the mootness argument her predecessor made in *Wilson* ready to deploy if it suits her. Molina argues that *Wilson* is inapposite because the Children's Plans "seek to enjoin not only completing the procurement, but also performing the resulting contracts," *id.* (citation omitted), but again, the Commissioner has not advanced this argument. Nor has she disavowed the position her predecessor took in *Wilson*. If past is prologue, a mootness claim would soon follow any contract execution in this case, and the Court therefore has additional, independent bases to grant interim relief.

## II. The Children's Plans' claims are ripe.

The Commissioner and Molina erroneously contend the Children's Plans' *ultra vires* claims are not ripe. *See* Commissioner Resp. 11-15; Molina Resp. 24-27. Their arguments rely on the Commissioner's testimony that she (1) will not sign any new contracts until she has first decided the appeals of denials of the Children's Plans' bid protests and (2) has not yet determined whether the procurement was lawfully conducted. *See* Commissioner Resp. 12-13 (citing 6.RR.132-33); Molina Resp. 25-26 (citing 6.RR.132). Based on that testimony, they argue that claims of harm are too speculative. But the theoretical possibility that the Commissioner might

later change course and grant the Children's Plans' bid-protest appeals does not affect whether their *ultra vires* claims are ripe now. In determining ripeness, "courts must consider whether, at the time a lawsuit is filed, the facts are sufficiently developed so that an injury **has occurred** or **is likely to occur**, rather than being contingent or remote." *Patel v. Tex. Dep't of Licensing & Regulation*, 469 S.W.3d 69, 78 (Tex. 2015) (emphasis added) (citation modified). Here, the record shows both.

First, injury has **already occurred** in the form of disruptions to the Children's Plans' businesses, loss of staff, and difficulty filling positions caused by the uncertainty of whether the notice of intent to award will be executed and implemented. *See, e.g.*, Children's Plans Mot. 19-22; *see also Abbott v. Doe*, 691 S.W.3d 55, 75-76 (Tex. App.—Austin 2024, no pet.) (parties' *ultra vires* claims were ripe and did not require final agency determination where parties had already experienced harm). By itself, harm that has already occurred is sufficient to establish that the Children's Plans' claims are ripe.

Second, the Commissioner's actions show that additional harm is likely to occur. As she conceded below, the Commissioner signed off on a February 2024 action memo requesting her approval to issue the notice of intent to award knowing it would eliminate the Children's Plans. 6.RR.140; 12.RR.PX.284. She even contemplated changing the outcome to award contracts to the Children's Plans but

determined she could not. 6.RR.141 ("I actually wanted to try to find a way to add them back in, but I couldn't—I couldn't come up with a principled way to do it[.]"). Furthermore, the Commissioner's appeal of the trial court's temporary injunction and her lengthy defense of the legality of the procurement in her response, *see* Commissioner Resp. 20-41, clearly establish that the Commissioner's denial of the Children's Plans bid-protest appeals is a foregone conclusion.[5]

The Commissioner also claims, "[w]hen a plaintiff alleges that an agency has incorrectly applied the law governing the subject of its dispute, that claim is not ripe if the plaintiff has not availed himself of the available recourse under that law." Commissioner Resp. 14 (citing *Riner v. City of Hunters Creek*, 403 S.W.3d 919, 923-24 (Tex. App.—Houston [14th Dist.] 2023, no pet.); *Marble Falls Indep. Sch. Dist. v. Scott*, 275 S.W.3d 558, 567 (Tex. App.—Austin 2008, pet. denied)). Molina argues likewise. *See* Molina Resp. 27 (citing *Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998); *City of Anson v. Harper*, 216 S.W.3d 384, 395 (Tex. App.—Eastland 2006, no pet.)). The cases the Commissioner and Molina cite, however, are readily distinguishable because they

---

[5] Molina cites *Webster v. Commission for Lawyer Discipline*, 704 S.W.3d 478, 488 (Tex. 2024), to suggest this Court "must presume that Commissioner Young will consider the Losing Plans' appeals with an open mind and resolve them in line with the law," Molina Resp. 26. *Webster* is inapposite to *ultra vires* claims, as it merely noted that each branch of government should be presumed to be acting in good faith in determining whether there has been a violation of the separation of powers.

did not involve *ultra vires* claims, which do not require exhaustion of administrative remedies. *See infra* pp. 16-20.

Indeed, the very nature of *ultra vires* claims demonstrates why the Children's Plans' claims are ripe. Forcing the Children's Plans to wait for a decision on their bid-protest appeals would allow the Commissioner time to ink contracts with the intended MCOs before the Children's Plans have time to stop her—which she testified she would do.[6] *Ultra vires* claims brought at that point would be open to challenge for mootness, as the Commissioner's predecessor argued in a similar case. *See supra* p. 11. And any *ultra vires* claim to rescind the already-executed contracts would be open to challenge on immunity grounds as improperly seeking retrospective relief. *See, e.g.*, *Heinrich*, 284 S.W.3d at 369 (*ultra vires* claims are limited to equitable prospective relief).

The Supreme Court has stated that "[r]ipeness concerns not only whether a court **can act**—whether it has jurisdiction—but prudentially, whether it **should**." *Perry v. Del Rio*, 66 S.W.3d 239, 249-50 (Tex. 2001) ("In assessing ripeness, . . . a court is required to evaluate both the fitness of the issues for judicial decision and

---

[6] *See* 6.RR.132 ("[A. O]nce that [bid protest] is finished, then I would move forward."); 6.RR.147 ("Q. And if you were to deny those appeals, then you could execute the contracts immediately at any time after denying those appeals; right? A. Yes, ma'am."); *id*. ("Q. But there wouldn't be any waiting period or time period. You could execute the contracts immediately after denying the appeals? A. Yes, that's correct[.]").

the hardship to the parties of withholding court consideration." (citation modified)).

Here, the Court not only can act but ***should*** act. Given that the Commissioner's denial of the Children's Plans' bid-protest appeals is a foregone conclusion and that she will sign the contracts in question immediately thereafter, the resulting harm to the Children's Plans and their members, *see infra* pp. 39-43, justify judicial action to preserve the status quo while this suit and appeal are pending.

### III. Exhaustion of administrative remedies is not required when asserting *ultra vires* claims.

The Commissioner also argues (incorrectly) that the Children's Plans have not exhausted their administrative remedies in two respects: by (1) failing to protest the terms of the solicitation that initiated the procurement and (2) failing to wait for the Commissioner's final decision on their bid-protest appeals. *See* Commissioner Resp. 15.

As to the Commissioner's first exhaustion argument, objecting to the solicitation's terms was not required because the *ultra vires* claims ***are not*** based on the unlawfulness of the solicitation. Instead, the Children's Plans challenge the illegality of the Commissioner's subsequent conduct of the procurement, which violated the very statutes that she expressly promised to obey. *See infra* pp. 23-39. Accordingly, it is immaterial whether the Children's Plans protested the terms of the solicitation before bringing these *ultra vires* claims.

16

As to the Commissioner's second exhaustion requirement, Texas law does not require a claimant to exhaust administrative remedies before filing *ultra vires* claims. *See, e.g.*, *Kilgore Indep. Sch. Dist. v. Axberg*, 535 S.W.3d 21, 34 (Tex. App.—Texarkana 2017, no pet.) (noting that "there are exceptions to the exhaustion-of-administrative-remedies doctrine," including "when an administrative agency purports to act outside its statutory powers"); *Brennan v. City of Willow Park*, 376 S.W.3d 910, 921-22 (Tex. App.—Fort Worth 2012, pet. denied) (parties were not required to pursue any type of protest procedure where they alleged that agency acted outside its statutory powers). This makes sense: As noted above, requiring exhaustion of administrative remedies would be fundamentally incompatible with the *ultra vires* cause of action, which is limited to *prospective* relief. *See supra* p. 15.

Moreover, *ultra vires* claims are common-law claims, and exhaustion is not a general precondition to suit in district court absent a statute establishing an exhaustion requirement. *See Cash Am. Int'l Inc. v. Bennett*, 35 S.W.3d 12, 15 (Tex. 2000) ("***When exhaustion is required***, courts may review the administrative action only at the time and in the manner designated by statute." (emphasis added)). "A Texas district court . . . is a court of general jurisdiction," and "the presumption is that [such courts] have subject matter jurisdiction unless a showing can be made to the contrary. *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 75 (Tex. 2000). "Thus, all claims are presumed to fall within the[ir] jurisdiction . . . unless the Legislature or

17

Congress has provided that they must be heard elsewhere." *Id.* (citation modified). Indeed, "[*s*]*omething* unmistakable must be present to displace the strong presumption of jurisdiction" and, "[a]bsent a compelling showing to the contrary, we presume that . . . the jurisdiction of a district court—our state's sole court of general jurisdiction—remains undisturbed." *S.C. v. M.B.*, 650 S.W.3d 428, 436, 444 (Tex. 2022).

As an exception to the "strong presumption" of jurisdiction, exhaustion applies only where the Legislature has made it a prerequisite for jurisdiction. The most prominent examples are review of administrative decisions under the Administrative Procedure Act ("APA"), *see, e.g., Tex. Dep't of Protective & Regul. Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 173 (Tex. 2004), and where an agency is assigned exclusive jurisdiction, *see, e.g., In re Oncor Elec. Delivery Co.*, 630 S.W.3d 40, 44-45 (Tex. 2021).

Here, neither applies. Disputes that fall under HHSC's procurement regulations are specifically carved out of the APA because bid protests (and any internal appeals) are not defined as contested cases under the APA. *See* 1 Tex. Admin. Code § 391.303(d) ("HHSC will not consider protests filed pursuant to this subchapter as contested cases under the [APA]."). And, because it is presumed that a district court has subject-matter jurisdiction, "the burden to demonstrate that exclusive jurisdiction rests with an administrative agency falls on the party resisting

18

the district court's jurisdiction." *Oncor Elec. Delivery*, 630 S.W.3d at 44-45. The Commissioner identifies no statute that expressly or impliedly removes these *ultra vires* claims from a district court's general jurisdiction. In sum, the Commissioner tries to impose an exhaustion requirement where none exists.[7]

For its part, Molina argues that exhaustion applies except for "ultra vires claims that challenge an agency's jurisdiction to decide the matter **at all**," Molina Resp. 30, but the cases it cites do not support this point. *Texas Education Agency v. Cypress-Fairbanks Independent School District* was a teacher-termination proceeding arising under the Education Code, which provided for initial adjudication by the Education Commissioner. *See* 830 S.W.2d 88, 89 & n.1 (Tex. 1992). The Supreme Court thus looked to the APA to determine whether exhaustion was required, *id*. at 90, but, as discussed above, the APA does not apply in this case. In *Westheimer Independent School District v. Brockette*, the Supreme Court acknowledged that "intervention by the court in administrative proceedings may be permissible when an agency is exercising authority beyond its statutorily conferred powers." 567 S.W.2d 780, 785 (Tex. 1978). But while the "absence of jurisdiction

---

[7] The Commissioner suggests that, "when an available administrative remedy 'may moot the claim . . . the claim is barred.'" Commissioner Resp. 15 (alteration in original) (quoting *Hensley v. State Comm'n on Jud. Conduct*, 692 S.W.3d 184, 194 (Tex. 2024)). *Hensley*, however, hurts the Commissioner more than it helps because the Supreme Court held that the exhaustion-of-remedies doctrine did ***not*** bar the plaintiff's *ultra vires* claim. *See* 692 S.W.3d at 198.

in an administrative agency" was offered as one way an agency might act outside its authority, *id.*, the Court did not hold that it was the ***only*** way. To the contrary, the Supreme Court has since clarified the broad scope of *ultra vires* conduct. *See, e.g.*, *Hous. Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 163 (Tex. 2016) (*ultra vires* claims may be based on state actor's "exercise of judgment or limited discretion without reference to or in conflict with the constraints of the law authorizing the official to act").

## IV. The Children's Plans did not waive their *ultra vires* claims by failing to object to the terms of the procurement's solicitation.

Similarly, the Commissioner incorrectly argues that, when the Children's Plans agreed to the terms of the solicitation by submitting their proposals, they "waived any claim of an ongoing violation of their rights not to be subjected to an unlawful process" and that "[i]t was at that point the nature of any relief the Court could have granted became retrospective for purposes of *ultra vires* law." Commissioner Resp. 18-19. Both parts of the Commissioner's argument are wrong.

First, the Children's Plans' claims are based on their objections to the Commissioner's ***execution*** of the procurement, after they and the other MCOs submitted their proposals—in large part because how the Commissioner conducted the procurement violated the promises made in the solicitation.[8] The provision of the

---

[8] The solicitation expressly and unambiguously stated that "[p]roposals shall be evaluated ***in accordance with State law***, including but not limited to, applicable

procurement requiring challenges to the content of the solicitation, *see* 9.RR.PX.38, is therefore of no relevance.

Second, the Commissioner fails to explain how the Children's Plans' alleged waiver of objections to the contents of the solicitation can somehow convert a claim for remedial action as to ***future conduct that has not occurred*** into a claim for ***retrospective*** relief. Based on the definitions of retrospective and prospective relief contained in the very case she cites on this point, the Children's Plans' *ultra vires* claims seeking to prohibit the Commissioner from taking further unlawful action, on their face, are not attempts to "remedy past violations" but rather to "compel[] legal compliance going forward." *City of Austin v. Util. Assocs., Inc.*, 517 S.W.3d 300, 309 (Tex. App.—Austin 2017, pet. denied).

## V. The Children's Plans seek only to halt unlawful conduct, not to compel the Commissioner to redo the procurement.

The Commissioner erroneously argues that the Children's Plans are unlikely to succeed on the merits because they "lack any judicially enforceable right to compel the Commissioner to redo the procurement process" and "[n]othing in the

---

provisions of **Chapters 533, 536, and 2155 of the Texas Government Code**." 9.RR.PX.38 (emphasis added). The Children's Plans had no reason to think the Commissioner would violate that guarantee. *See* 5.RR.85 (testimony by Ms. Molina agreeing that "it was reasonable . . . for a bidder to—or prospective bidder to understand that the agency would in fact comply with" these statutory provisions); *cf. EIS Dev. II, LLC v. Buena Vista Area Ass'n*, 715 S.W.3d. 689, 699 (Tex. 2025) ("Waiver is an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." (citation modified)).

statutes governing that process authorizes a court to order such relief."
Commissioner Resp. 16. But the Children's Plans do not seek to compel the
Commissioner to redo the procurement. *See* CR.3308-3506, 4716-5832 (Children's
Plans' pleadings and applications for injunctive relief). Rather, they seek to enjoin
the Commissioner from ***continuing*** to engage in unlawful conduct in the future—
and that is the prospective relief the trial court granted. *See* CR.5876 ("Plaintiffs
properly seek only prospective relief—specifically, injunctive relief prohibiting
Defendant from awarding, executing, or otherwise implementing the intended RFP
contracts and thus preventing further unlawful acts in connection with Defendant's
procurement or contracting processes[.]"); CR.5883 (ordering that Commissioner
"shall refrain from awarding, signing, entering into, executing, implementing, or
otherwise taking action to effectuate or perform any contracts resulting from or in
connection with the STAR & CHIP RFP or to further the procurement or contracting
processes for the STAR & CHIP RFP").[9]

---

[9] The Commissioner cites *In re Stetson Renewables Holdings, LLC*, 658 S.W.3d 292, 297 (Tex. 2022) (orig. proceeding), and *Morath v. Kingsville Indep. Sch. Dist.*, 710 S.W.3d 918, 925 (Tex. App.—15th Dist. 2025), in support of its argument. Commissioner Resp.16-17. Both cases are inapposite. In neither case did the Supreme Court or this Court hold that a ***common-law*** *ultra vires* claim may be asserted only when the Legislature expressly provides a judicial remedy. Nor did either court hold that an *ultra vires* claim must be dismissed unless it seeks a remedy expressly authorized by the statute allegedly violated. The Children's Plans' *ultra vires* claims merely seek to prohibit the Commissioner from further violating established statutory mandates, and the Supreme Court has held such prospective injunctive relief is a proper remedy for *ultra vires* conduct. *See, e.g., Heinrich*, 284

Ignoring the Children's Plans' pleadings and the trial court's injunction, the Commissioner cites instead to a declaration provided by an expert for Appellee Superior HealthPlan, Inc. *See* Commissioner Resp. 19 (citing CR.3279). But that expert merely expressed her ***opinion*** that "[t]he only remedy that can cure" the Commissioner's unlawful disclosure of Superior's proposals to competitors during the procurement—which is just one of the many *ultra vires* acts committed by the Commissioner—"is to cancel the Notice of Intent to Award and to redo the entire process." CR.3279. Whether the Commissioner ultimately pursues that course of action is yet to be seen, but redoing the process is ***not*** relief the Children's Plans have sought.

## VI. The Commissioner's procurement is violating statutory and regulatory mandates—and she will continue to commit *ultra vires* acts.

Following a four-day evidentiary hearing, the trial court concluded that the Commissioner has disregarded numerous mandatory considerations and preferences. HHSC's witnesses methodically conceded the relevance of these requirements while failing to identify record evidence of their application—thus demonstrating they should have been applied in this procurement but have not been. The merits therefore support temporary relief.

---

S.W.3d at 368-69 (governmental immunity "does not preclude prospective injunctive remedies in official-capacity suits against government actors who violate statutory . . . provisions").

**A.**    **The record shows the Commissioner is disregarding legal requirements, which is not within her discretion.**

The Commissioner's merits argument in response, *see* Commissioner Resp. 20-41, suffers from a fundamental misunderstanding of the Children's Plans *ultra vires* claims. *Ultra vires* actions can include acts of "limited discretion . . . in conflict with the constraints of the law authorizing the official to act." *Hous. Belt*, 487 S.W.3d at 163; *see also Wilson*, 607 S.W.3d at 854-55 (unlawful HHSC procurement administration can constitute *ultra vires* action). The Children's Plans' *ultra vires* claims are not based on ***how*** the Commissioner exercised her discretion, as she repeatedly and erroneously suggests in her response, but ***whether*** she complied with her legal obligations at all.

The record in turn demonstrates that the Commissioner has failed to apply mandatory considerations—and that she could ***not*** have taken these considerations into account given how the procurement was ultimately structured and scored. Most notably, the laws the Commissioner has disregarded require consideration of ***prior or current*** data—bidders' past performances, prior implementation of quality initiatives, and current provider networks, for example. But HHSC's evaluation of bids (both its Technical Questions and the instructions given to evaluators) focused almost exclusively on respondents' promises about the ***future***. For example:

- Mr. Ramirez admitted that evaluators were instructed to consider how respondents would perform in the future and did ***not***

24

"document anything about what [respondents] have done in the past or are presently doing." 5.RR.230.

- ***Nothing*** in the evaluator training materials instructed them "to give any of the statutory preferences or considerations at issue in this case." 5.RR.229; *see also, e.g.*, 5.RR.89 (agreeing that "there was no discussion of preference whatsoever with the evaluators"); 5.RR.88-89 (evaluators were not trained on or asked to score section 533.003(a)(1) preference or instructed on section 536.052(d) preference).

- HHSC has not considered data relevant to these issues it already had in its possession. *See* 5.RR.230-31 (agreeing that "the agency did not consider any . . . data in this procurement unless it was provided in response to one of the questions").

In sum, as the procurement was implemented, the Commissioner ***could not*** have satisfied her statutory obligations even if she had wanted to.

The Children's Plans do not suggest the Commissioner merely "made a mistake or 'got it wrong'" when making decisions she is "statutorily empowered to make." Commissioner Resp. 21 (quoting *Util. Assocs.*, 517 S.W.3d at 310). Instead, they contend (and the record confirms) that the Commissioner completely disregarded statutory mandates and thus "exercised discretion 'without reference to or in conflict with the constraints of the law authorizing [her] to act.'" *Id.* (alteration in original) (quoting *Hall v. McRaven*, 508 S.W.3d 232, 241 (Tex. 2017)). And the trial court found that the Commissioner is indeed administering the procurement in conflict with governing state law by disregarding, ignoring, or otherwise violating multiple statutory and regulatory mandates. The Commissioner acknowledged on

the stand that these violations are ongoing because the procurement has not yet been completed. *See* 6.RR.128 ("[Q.] Mr. Ramirez testified earlier that the procurement is ongoing. You would agree with that? A. Yes, sir."). This confirms that the Children's Plans properly seek prospective relief.

### B.    The Children's Plans have standing.

The Commissioner's standing argument, *see* Commissioner Resp. 25-26, misapprehends the standing analysis for challenges to a procurement and for *ultra vires* claims.

In some bid-protest cases—say, where a challenge addresses an isolated scoring issue—a protesting party might lack standing because the error could not have affected the procurement's outcome. But in a more comprehensive challenge to a procurement, "a bid protester has standing when, assuming its protest is successful, it would have an opportunity to participate in a new procurement." *VAS Realty, LLC v. United States*, 26 F.4th 945, 949 (Fed. Cir. 2022); *see also, e.g.*, *Tinton Falls Lodging Realty, LLC v. United States*, 800 F.3d 1353, 1358 (Fed. Cir. 2015) (bid protester can establish standing "by showing that it was an actual or prospective bidder whose direct economic interest would be affected by the award of the contract or by failure to award the contract"). Likewise, bidders for government contracts who allege endemic illegality have standing to seek "forward-looking relief" if they plan to bid on future contracts that would contain the same

26

challenged infirmity. *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 210-11 (1995). Here, even if they were required to, the Children's Plans have met this burden by demonstrating (as the trial court found) pervasive statutory and regulatory violations infecting the ***entire*** procurement—and another ongoing procurement, *see infra* note 11—thus rendering the results unlawful.[10]

But though helpful to the Children's Plans, the standing caselaw from federal bid-protest cases is ultimately irrelevant here. Whether a "clear and prejudicial" violation must be shown for a court to "set aside a procurement decision" in a bid-protest case, Commissioner Resp. 26 (emphasis omitted) (quoting *Elcon Enters., Inc. v. Wash. Metro. Area Transit Auth.*, 977 F.2d 1472, 1478 (D.C. Cir. 1992)), is of no moment because the Children's Plans ***do not ask any court to set aside the procurement***. Instead, in accordance with Texas *ultra vires* jurisprudence, they seek to enjoin ***future*** unlawful actions by the Commissioner that would perpetuate the unlawful acts that have already occurred. The Commissioner does not suggest, and cannot show, that the Children's Plans lack standing to secure ***prospective*** relief given the injuries inflicted on them by the unlawful procurement (and consequent

---

[10] That the plaintiff managed care organization in *Wilson* was able to point to a single dispositive error in that procurement as "the only entity qualifying for a mandatory contract award," Commissioner Resp. 26-27, was merely a factual quirk of that case—not a prerequisite for seeking prospective relief in a challenge involving a procurement.

27

denial of their bids) and their intention to participate in future procurements. *See, e.g.*, *Lazarides v. Farris*, 367 S.W.3d 788, 801 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (applying "general rule [that], to have standing[,] an individual must demonstrate a particularized interest in a conflict distinct from that sustained by the public at large" in *ultra vires* context).[11]

## C.    The Commissioner's exhaustion-of-remedies argument remains fundamentally misguided.

No more availing is the Commissioner's exhaustion-inflected argument, *see* Commissioner Resp. 26, 28, which fails for the same reasons discussed above, *see supra* pp. 16-20. It is worth repeating, however, that the Children's Plans could not have "raise[d] their objections" or initiated "pre-bid protest[s]" on the same grounds that underlie this lawsuit because it was not apparent from the solicitation that the Commissioner would defy the law. Far from it: The procurement expressly promised that "[p]roposals [would] be evaluated in accordance with State law." 9.RR.PX.38. Given this assurance, the Children's Plans had no reason to presume, much less claim through the formal administrative-protest process, that the Commissioner would defy those statutes and act in an *ultra vires* manner. *See supra* note 8.

---

[11] The concern that these statutory and regulatory violations might occur in future HHSC procurements is not merely hypothetical: The trial court found that the forthcoming STAR Kids procurement will be conducted in the same flawed manner as the STAR & CHIP procurement and "will therefore also violate statutory and regulatory requirements and be ultra vires." CR.5878-79 (¶ 9).

This exhaustion argument is part and parcel of a recurring theme in the Commissioner's brief: that any fault lies with the Children's Plans, not the Commissioner. The Commissioner suggests the Children's Plans should have protested the procurement in advance—even though they had no basis to believe it would be conducted unlawfully.[12] The Commissioner further argues bidders should have provided certain information ***even if the procurement did not request it***, reasoning they "have every incentive to make their best case for why the State should contract with them." Commissioner Resp. 28. But the procurement was not styled as an open-ended exercise that afforded respondents unfettered discretion and unlimited opportunity to provide every piece of information conceivably relevant to their bids. Specific questions were asked, tight page limits were imposed, and bidders were directed to respond ***only*** to the Technical Questions and not provide any other materials. *See* 5.RR.84-85, 96-97; 7.RR.18, 88-89; 9.RR.PX.38. In the end, the Commissioner did not ask the necessary questions, collect the mandated information, consider relevant data already in HHSC's possession, or instruct the procurement evaluators to award points for the required considerations and

---

[12] That the procurement's Technical Questions did not ask about critical issues like past performance and quality metrics does not change this conclusion. HHSC had in its possession volumes of data, including quality metrics, about the Children's Plans and other bidders, so the Technical Questions' shortcomings did not necessarily indicate that the Commissioner would fail to apply these mandatory considerations.

preferences. The Commissioner cannot pass the buck here; the procurement's illegalities are her own doing, not the Children's Plans'.

## D. The record shows the Commissioner has failed to comply with multiple statutory and regulatory mandates.

A thoughtful examination of the record confirms the trial court's conclusion that the Children's Plans have a probable right to relief on their *ultra vires* claims, and the Commissioner's attempts to distract from the record are unavailing.

### 1. The Commissioner has not complied with section 2155.144 when determining "best value."

The Commissioner is required to "document that [she] considered" an enumerated list of "relevant factors" to ensure that "any procurement method approved by [her] provides the best value to the agency." TEX. GOV'T CODE § 2155.144(c). Among the listed factors are "indicators of probable vendor performance under the contract such as *past vendor performance*, the vendor's financial resources and ability to perform, the vendor's experience and responsibility, and the vendor's ability to provide reliable maintenance agreements." *Id.* § 2155.144(d)(5) (emphasis added).

The Children's Plans elicited overwhelming evidence *from HHSC officials* that the Commissioner failed to "consider" and "document . . . past vendor

performance" as required by statute. Among other evidence and testimony,[13] Mr. Ramirez conceded that past performance is relevant and must be considered in this procurement, 5.RR.226-27, but further admitted that it "was not an express and independent consideration in this procurement"; that "there is no specific documentation showing the agency's consideration of relevant factors including past performance"; and that "the agency did not require the submission of past vendor performance." 5.RR.227-28; *see also* CR.5839-63. Tellingly, HHSC ***rejected*** the recommendation of Mercer, its outside consultant, to include past performance as a separate category with independent scoring weight, 5.RR.181; 9.RR.PX.114, a clear indication of the Commissioner's failure to consider this factor.[14]

Confronted with the overwhelming evidence adduced at the hearing, the Commissioner deploys a legal feint, arguing that, because "section 2155.144(d) does

---

[13] The Children's Plans submitted to the trial court a detailed catalogue of all relevant evidence adduced at the hearing in support of their claims. *See* CR.5839-63. In the interest of brevity, they will cite to this summary throughout their merits argument.

[14] The Commissioner attempts to recast this piece of evidence in her favor, suggesting the rejection of Mercer's recommendation constituted an exercise of "judgment and deliberation" for which no *ultra vires* claim can be made. Commissioner Resp. 24-25. But because consideration of past performance was mandatory, the Commissioner did ***not*** have discretion to disregard it altogether. This doesn't mean the Commissioner was required to agree with Mercer about exactly ***how*** to take account of past performance, *contra id.* at 41 ("Among the other legal obligations Plaintiffs create out of whole cloth is the requirement to always agree with the agency's hired consultant."), but her rejection of this particular recommendation is compelling evidence of her failure to consider and document a mandatory factor.

31

not require consideration of every enumerated factor," this "statutory scheme [] vests 'absolute discretion' in the Commissioner with respect to weighing and applying the factors" and cannot support an *ultra vires* claim. Commissioner Resp. 22-23 (quoting *Hall*, 508 S.W.3d at 241). But she misreads the statutory text and contradicts the sworn testimony of the procurement's point person: While subsection (d) of section 2155.144 provides that the Commissioner "***may*** consider all relevant factors in determining the best value, including" the enumerated factors, subsection (c) instructs that the Commissioner "***shall*** document that [she] considered all relevant factors under Subsection (d) in making [an] acquisition." TEX. GOV'T CODE § 2155.144(c)-(d) (emphasis added). The proper interpretation of the statute's use of both "may" and "shall" is that ***all*** enumerated factors that are indeed relevant to a given procurement ***must*** be considered—just not that all factors will necessarily be relevant (and thus considered) in every procurement. For this procurement, MCOs' past performances are highly relevant, as Mr. Ramirez, the "point person" for the procurement, conceded on the stand. *See* 5.RR.227; 6.RR.121. And, as Mr. Ramirez also conceded, the Commissioner is required to consider past performance in this procurement, 5.RR.226-27—yet the evidence shows that neither she nor anyone else at HHSC did so.

The Commissioner also attempts to rewrite the record, incorrectly stating Mr. Ramirez's "testimony at the temporary-injunction hearing was that past performance

32

*was* documented in the procurement file." Commissioner Resp. 23. But Mr. Ramirez claimed that *the entire procurement file* constitutes "documentation showing the agency's consideration of relevant factors including past performance," but he also agreed that the file did not demonstrate the Commissioner's compliance. *Id*. at 23-24 (quoting 5.RR.227). And notwithstanding his assurance that, "if past performance was [in the response], it was considered," *id.* at 24 (alteration in original) (quoting 5.RR.110), there is *nothing* in the record substantiating his *ipse dixit*—no questions about past performance or references to past performance in the evaluator instructions or the ultimate evaluations.[15] Mr. Ramirez essentially asked the trial court to take his word for it that past performance was considered. But section 2155.144 does not allow for that; it requires not only consideration but also *documentation* that past performance was considered, which the Commissioner cannot provide.

Ultimately, the Children's Plans do not seek to "compel the Commissioner to weigh certain best-value criteria more favorably than others," Commissioner Resp. 24, but rather to ensure that the mandatory criteria are actually considered and documented as the statute requires. The Commissioner's *coup de grâce* in this

---

[15] The utter absence of evidence readily belies the Commissioner's suggestion that "the evidence conclusively shows HHSC's compliance with all applicable statutes," Commissioner Resp. 25—as does the fact that, despite this assurance, the Commissioner rarely cites the record in support of her merits arguments.

section is to suggest that all applicable statutes were followed because she promised, ahead of time, that they would be. *See id.* at 25 (claiming that Children's Plans' arguments "contradict[] the express terms of the [procurement] and the procedures HHSC and its evaluators followed"). The record tells a very different story, and the Commissioner's broken promise to comply with the statutes only demonstrates why her focus on protesting the solicitation is a distraction. *See supra* pp. 20-21.

**2.    The Commissioner has failed to consider provider networks and quality initiatives as required by law.**

The Commissioner baldly claims that "[t]he trial court's findings based on sections 533.003(a)(1) and 536.052(d) are not based on any finding of an incorrectly applied or deprived-of preference," Commissioner Resp. 27, but that is precisely what the record shows.

First, section 533.003(a)(1) requires the Commissioner to "give preference to organizations that have significant participation in [their] provider network[s] from each health care provider in the region who has traditionally provided care to Medicaid and charity care patients." TEX. GOV'T CODE § 533.003(a)(1). But no such preference was given, not least because the procurement did not even ask about bidders' existing provider networks (or consider information about networks already in HHSC's possession), let alone whether those providers "traditionally provided care to Medicaid and charity care patients." *See* CR.5841-43. Taken together, this

34

evidence demonstrates that section 533.003(a)(1)'s requirements were not applied *at all*.[16]

Second, section 536.052(d) requires the Commissioner to "give preference to an organization that offers a managed care plan that successfully implements quality initiatives . . . or meets quality of care and cost-efficiency benchmarks." TEX. GOV'T CODE § 536.052(d). Again, this did not happen. The Commissioner never developed the required benchmarks, and the procurement did not ask for information (or consider data already in HHSC's possession) about whether bidders had implemented quality initiatives. *See* CR.5843-45. Once again, the significant weight of evidence demonstrates that the Commissioner ***did not apply*** section 536.052(d)—a decision clearly outside her discretion.

The Commissioner contends otherwise, claiming section 2155.144(n) allows her to disregard any statutory criteria other than "best value." Commissioner Resp. 27. But even setting aside that the Commissioner did not properly apply section 2155.144, *see supra* pp. 30-34, this is *post hoc* revisionism of the highest

---

[16] The Commissioner's emphasis on other discretionary ***facets*** of section 533.003(a)(1) does not help her. She points out that "[a]dditional discretion is allowed in determining which organizations have '***significant*** participation' in the provider network from '***each*** healthcare provider ***in the region*** who has ***traditionally*** provided care to Medicaid and charity care patients.'" Commissioner Resp. 29 (quoting TEX. GOV'T CODE § 533.003(a)(1)). Maybe so—but she cites nothing in the record showing ***any*** of this information was collected or considered. Once again, while the Commissioner may have had discretion as to ***how*** to apply the preference, she cannot decide to disregard it altogether.

order: Nothing in the record suggests the Commissioner or anyone at HHSC disregarded sections 533.003(a)(1) and 536.052(d) because of a "conflict" with section 2155.144. *See* TEX. GOV'T CODE § 2155.144(n) ("***To the extent of any conflict***, this section prevails over any other state law relating to the procurement of goods and services[.]" (emphasis added)). Nor does the Commissioner explain the substance of any such conflict.

Further confirming the Commissioner's *ex post* reinterpretation of the procurement is her argument that "[o]nly if two bidders offer the same value would these preferences even need to come into play." Commissioner Resp. 27. She cites ***nothing*** in the record that this is how HHSC construed and applied statutory preferences during the procurement. In fact, the record specifically contradicts the Commissioner's assertion:

> Q. Now, Ms. Molina, would you agree with me that one common and ordinary meaning of preference would be choosing one thing over another?
>
> A. That's one way you could define preference.
>
> Q. But that's not how HHSC applied preference as used in Section 533.003 in the STAR and CHIP procurement, is it?
>
> A. No. . . .
>
> Q. Now, in applying preferences used in Section 62.155(c), the agency here applied the term "preference" to mean choosing one type of respondent over another; correct?
>
> A. Yes.

36

Q. And that was different than how HHSC applied the term "preference" in 533.003 and 536.052; correct?

A. Yes.

5.RR.93, 119. Moreover, even if this had been the Commissioner's (erroneous) view of the law, HHSC could not have operationalized the preferences in this way because, as the record shows, they did not consider the information required to do so.

### 3. The Public Information Act did not compel the wrongful disclosure of proposals.

In defense of her wrongful disclosure of proposals to Aetna while the procurement was active, the Commissioner hides behind the Public Information Act ("PIA"), which, she argues, compelled her to release the information and trumps any procurement regulation. *See* Commissioner Resp. 36-38. This position is surprising: The Children's Plans are currently engaged in a separate PIA lawsuit in which the Commissioner has argued that, even as of 2024, analogous documents—including those HHSC unlawfully released to Aetna—could ***not*** be released under the PIA because such disclosure would harm competitive interests. *See* TEX. GOV'T CODE § 552.104(a). The Attorney General has agreed with this position. *See* Tex. Att'y Gen. Open Recs. Letter Ruling OR2023-034773 (2023); Tex Att'y Gen. Open Recs. Letter Ruling OR2024-018260; Tex. Att'y Gen. Open Recs. Letter Ruling OR2024-

019071. This argument is yet another attempt at *post hoc* revision that the Court should reject.[17]

### 4. The Commissioner has disregarded other procurement requirements.

The Commissioner superficially addresses other bases for *ultra vires* conduct. She argues, for instance, that it is self-evident she "consider[ed] different plans for different populations, as required by Texas Government Code section 533.003(a)(3)," simply because she "has noticed an intent to award contracts to different organizations in different service areas." Commissioner Resp. 32-33. But the evaluators were not informed which service areas respondents bid on unless the respondents included that information in their responses, 6.RR.93, and were not directed to consider service-area-by-service-area differences, 6.RR.224. As for the other statutory and regulatory violations, the Children's Plans address the bases for the trial court's conclusions in their motion, *see* Children's Plans Mot. 33-41, which the Commissioner's grab-bag of counterarguments do not refute.

---

[17] The Commissioner also argues that she did not violate 34 Texas Administrative Code section 20.208(d)(3) because she did not "disclose[] information ***derived from*** proposals," Commissioner Resp. 37—seemingly proposing a meaningful distinction between the ***proposals themselves*** and isolated information derived from them. This is unavailing: Increasing the magnitude of harm (by disclosing not only derived information but the entire proposals) doesn't somehow limit the severity of the offense.

*    *    *

The consequences of the Commissioner's decision to disregard these and other statutory mandates are significant, especially for Medicaid beneficiaries. Molina ultimately scored highest in the procurement even though, ***by HHSC's own estimation***, it "does not meet quality of care measure minimum performance standards in any of the programs it operates in." 5.RR.262; *see also* 9.RR.PX.69. Put plainly, low-performing MCOs rose to the top of the procurement scoring because the Commissioner did not apply criteria Texas law requires her to—ones that mandate consideration of how an MCO has performed in the past and its present provider networks—and instead relied on promises about the future. It's easy, of course, to make bold promises about the future. That's why Texas statutes and regulations (not to mention common sense) require consideration of bidders' records. The Commissioner's obligation to apply these mandatory considerations was hers and hers alone; her repeated attempts to effectively blame the Children's Plans fall flat given they took the Commissioner at her word that she would follow the law.

**VII.  The Children's Plans and their members will be irreparably harmed if the temporary injunction is not continued pending the final disposition of this appeal.**

Irreparable harm has already occurred—and will continue to occur—if the procurement is allowed to proceed. The record documents significant harm to the

39

Children's Plans, their employees, and Medicaid beneficiaries, *see* Children's Plans Mot. 19-28, and the Commissioner does not and cannot refute that showing of harm.

Instead, the Commissioner incorrectly argues the Children's Plans have failed to prove irreparable harm from the procurement because they did not present evidence that "they would have been entitled to a contract under a procurement they would find acceptable." Commissioner Resp. 45. The Commissioner's argument misunderstands the relief the Children's Plans seek. Their *ultra vires* claims are not contingent on showing they would have been awarded future contracts. Rather, their claims are based on the irreparable harm to them and their members that will result from losing their **current** contracts if the Commissioner's unlawful conduct continues. In her notice of intent to award, the Commissioner indicated publicly that she will **not** be awarding STAR & CHIP contracts to the Children's Plans moving forward. If the Court allows the Commissioner to execute the intended contracts while this appeal is pending, then the Children's Plans' will lose their **existing** contracts. Continuing the trial court's temporary injunction while this appeal is pending is the only way to prevent the Children's Plans' irreparable harm from occurring because it will keep their existing contracts in effect until this appeal is disposed.

The Commissioner next recycles her ripeness argument, stating that irreparable harm has not yet occurred because "she still needs to determine for

herself whether the State complied with the law." Commissioner Resp. 46. But the Children's Plans have (1) already sustained irreparable harm that the Commissioner's resolution of the bid protests appeal cannot undo and (2) presented overwhelming evidence that the Commissioner's denial of their bid-protest appeals is a foregone conclusion so as to establish the ripeness of their *ultra vires* claims. *See Patel*, 469 S.W.3d at 78; *supra* pp. 13-14. The Commissioner also argues that a complaint about contract rights "can rarely establish an irreparable injury," Commissioner Resp. 46, but she conspicuously fails to cite any evidence or authority rebutting the Children's Plans' substantial evidence. And importantly, the Commissioner has nothing to say about irreparable harm to Medicaid beneficiaries, leaving unrebutted the Children's Plans' evidence establishing that their beneficiaries—including hundreds of thousands of underprivileged children—will suffer irreparable injury if the procurement is allowed to proceed while this appeal is pending. *See* Children's Plans Mot. 25-28; CR.3140-41. This is in addition to the harm imposed on Texas taxpayers forced to foot the bill for the Commissioner's unlawful actions.

The Commissioner next broadly argues that granting injunctive relief in this case would be improper because "[a]ny winner of a previous procurement who loses a later procurement can allege general harms to its business such as a loss of revenue and the need to lay off employees" and, "[i]f such allegations were legally sufficient

41

to obtain an injunction, the State could be enjoined from moving forward with its business any time a current State contractor makes a losing bid to continue its services." Commissioner Resp. 47. This policy argument not only conflicts with Texas law holding that business disruption may constitute irreparable harm, *see* Children's Plans Mot. 20, but also reaches too far: If adopted, it would insulate state officials who conduct procurements from *ultra vires* actions, giving them free rein to violate the law and preventing any judicial remedy.[18]

Moreover, granting the Rule 29.3 motion would not "threaten the very structure of state government itself," Commissioner Resp. 47, as the Commissioner hyperbolically claims. The Commissioner's concern is only ever triggered when the party seeking injunctive relief first shows a probable right to relief on its claims against the State—and while the Children's Plans have made such a showing, not all plaintiffs will. Once that showing is made, this Court and the Texas Supreme Court have held that allowing the State to continue violating the law does not justify the

---

[18] The Commissioner's argument that the Children's Plans are not entitled to equitable relief because they failed to complain about the procurement earlier in the process, Commissioner Resp. 47-48, fails for the same reasons discussed above, *supra* pp. 20-21. It is also unclear how that is relevant to a request to continue the injunction while this appeal is pending. The Children's Plans did not sleep on any rights in connection with their Rule 29.3 motion. As this Court is aware, the parties reached an agreement with the Commissioner at the beginning of this appeal that obviated the need to file a Rule 29.3 motion until after the recent legislative session concluded. The Children's Plans then filed the motion by the deadline agreed upon by the Commissioner.

preservation of the status quo. *See, e.g., In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004) (orig. proceeding) ("The plaintiffs argue that the continuation of illegal conduct cannot be justified as preservation of the status quo, and of course we agree."); *State v. City of San Marcos*, 714 S.W.3d 224, 245 (Tex. App.—15th Dist. 2025, pet. filed) ("Where the acts sought to be enjoined constitute violation of the law . . . the status quo to be preserved cannot be a continuation of those acts."). The only genuine threat to "the very structure of state government" in this case is giving the Commissioner the unchecked discretion she is demanding without holding her accountable to the people her unlawful conduct irreparably harms and the Legislature whose laws she violates.

## VIII. The balance of the equities strongly supports continuing the temporary injunction pending the final disposition of this appeal.

For the purpose of deciding this motion, the balance of the equities must be reviewed in the context of the specific relief requested, so the only question before this Court is whether the balance of the equities supports continuing the trial court's temporary injunction *while this appeal is pending*. More concretely, the question is whether the permanent, irreparable harm that the Children's Plans and 1.5 million women and children who depend on Medicaid will suffer if the procurement is allowed to proceed while this appeal is pending outweighs the temporary prejudice, if any, to the Commissioner, Molina, and Aetna. The answer is a resounding yes. Power and profit should not prevail over people and precedent.

43

*Ultra vires* claims exist to prevent government actors from violating the law. *See, e.g.*, *State v. Hollins*, 620 S.W.3d 400, 405 (Tex. 2020). Necessarily, therefore, the inability to continue violating the law cannot constitute prejudice or inequity that bars claims for injunctive relief. Yet the Commissioner argues that she possesses the "intrinsic right to . . . enforce [the State's] own laws" and would be harmed by a challenge to her conduct. Commissioner Resp. 43. She is wrong.

At the start, the Commissioner's argument is legally baseless. She cites no case holding that the State has any (much less a compelling) interest in continuing to violate the laws it is supposed to obey and enforce. No wonder: Both this Court and the Supreme Court have held to the contrary, ruling that the State has *no* interest in violating the law and its desire to continue violating the law cannot justify denying injunctive relief. *See supra* pp. 42-43; *see also State*, 711 S.W.3d at 648 ("The County is not harmed by being required to follow the Texas Constitution."); *Texas v. Biden*, 10 F.4th 538, 560 (5th Cir. 2021) (noting that there is "no public interest in the perpetuation of unlawful agency action"). The Supreme Court has also recognized that, while "the State has an intrinsic right to . . . enforce its own laws," "where those laws are being defied or misapplied by a local official, an *ultra vires* suit is a tool to reassert the control of the state." *Hollins*, 620 S.W.3d at 405 (citation modified); *see also, e.g.*, *Chambers-Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 348-49 (Tex. 2019) (recognizing exception from sovereign immunity

for *ultra vires* claims). These holdings apply with particular force here, where the trial court found—based on HHSC's own documents and testimony—that the Children's Plans established a probable right to relief.

The Commissioner's argument—that the State's interest in enforcing its laws while this appeal is pending outweighs the permanent, irreparable harm it will inflict on the Children's Plans and 1.5 million Medicaid patients—goes too far. That generic argument, if adopted, would support denial of any Rule 29.3 motion in any appeal where the trial court has issued injunctive relief against a governmental official for unlawful conduct. And that would fatally undermine Rule 29.3, allowing the State to invalidate any injunctive relief entered against it simply by filing a notice of appeal. Such a sweeping rule conflicts with the Supreme Court's recognition only four years ago that the prohibition against counter-supersedeas in appeals brought by the State does not preclude an appellee from requesting—and a court of appeals from continuing—a trial court's grant of injunctive relief while an appeal is pending. *See In re Tex. Educ. Agency*, 619 S.W.3d 679, 680 (Tex. 2021) (orig. proceeding) (explaining that "prohibition against counter-supersedeas is textually limited to the supersedeas context and does not purport to constrain an appellate court's power to issue temporary orders under other authority" like Rule 29.3).[19]

---

[19] The same arguments above refute the Commissioner's contention that continuing the trial court's temporary injunction while this appeal is pending would inequitably enjoin a procurement process that HHSC "spent significant time and State

45

The Commissioner also claims, without analysis or citation to any record evidence, that continuing the trial court's temporary injunction while this appeal is pending would jeopardize continuity of care. Commissioner Resp. 44. The Commissioner has it completely backwards. As the trial court found—and the parties do not dispute—the existing Medicaid contracts have already been extended and will continue to be extended while the temporary injunction remains in effect, thus allowing Texas Medicaid beneficiaries to remain with their current plans. *See* CR.5882; 5.RR.181. In contrast, allowing the procurement to continue threatens the continuity of care for 1.5 million Medicaid beneficiaries by forcing them to switch healthcare plans and, potentially, healthcare providers. Children's Plans Mot. 23-25. And every one of the Children's Plans' 500,000-plus beneficiaries will lose access to the mission-driven, high-quality, integrated pediatric healthcare organizations that only the Children's Plans offer. *Id*. at 25-28. The Commissioner's speculative contention that "provider networks likely will naturally realign to provide continuity of care for patients even under a new plan," Commissioner Resp. 50, overlooks this

---

resources" to bring about and are "impacting other procurements in this space that have been in process for years." Commissioner Resp. 43-44. As the trial court concluded, the Commissioner did not carry out a lawful procurement process, and her failure on that front should not be rewarded by allowing the unlawful procurement to move forward while this appeal is pending. As to "the other procurements in this space," that presumably refers to the STAR Kids procurement, which the trial court found in its temporary-injunction order to have involved a substantively identical and unlawful procurement process as the STAR & CHIP procurement. CR.5878-79, 5883.

unique feature of the Children's Plans and the undisputed evidence that an integrated system is better for Medicaid beneficiaries. 8.RR.34-35, 137-38.

The Commissioner's argument that an injunction would "jeopardize . . . the ability to effectively manage the programs," Commissioner Resp. 44, likewise lacks reasoning or evidence—not least of all evidence of any negative effects on program management while the trial court's injunction has been in place for the past year. Indeed, the Commissioner presents *no* evidence of any harm to her, HHSC, Medicaid beneficiaries, or the public as a result of the procurement being paused because of this litigation.

The Commissioner's argument that she possesses exclusive authority to determine "which contracts for which managed care organizations best serve the public interest" and a judicial determination that STAR & CHIP contracts should have been awarded to the Children's Plans would violate the separation of powers, Commissioner Resp. 48-49, again mischaracterizes this litigation and the relief sought. The Children's Plans do not seek a judicial determination that any contracts should have been awarded to them. The crux of this case is whether the procurement has been and will continue to be conducted unlawfully. To be clear, the Children's Plans are not arguing that incumbency is a virtue unto itself, as the Commissioner suggests. Commissioner Resp. 49. They instead argue what the evidence shows—

47

unnecessarily and unlawfully forcing beneficiaries to switch plans and providers will adversely impact the continuity and quality of care those beneficiaries receive.

Finally, the Commissioner argues that halting the issuance of the awards is against the public interest, citing a statute that says "[i]t is the intent of the Legislature that agencies and institutions minimize the use of extensions that extend a contract beyond the base term and any optional extensions provided in a contract." Commissioner Resp. 52 (citation modified). But the statute ***does not*** say that contract extensions are prohibited or against the public interest. It merely says that contract extensions should be minimized and, even then, does not explain when contract extensions should and should not be granted. It strains belief to conclude from this general guidance that the Legislature would oppose the extension of an existing contract if the proposed replacement contract was the product of the Commissioner's unlawful disregard of the Legislature's procurement laws.[20]

## CONCLUSION

For the reasons herein and in their motion, the Children's Plans respectfully request that this Court grant their motion for temporary relief under Rule 29.3 and

---

[20] Molina and Aetna similarly fail to establish any legitimate risk of prejudice, much less prejudice sufficient to outweigh the irreparable harm the Children's Plans and 1.5 million Medicaid patients would suffer. Molina does not even bother addressing the equities at all in its response, which Aetna joined. And they certainly have not shown that they would be prejudiced by any delay in executing the contracts while this appeal is pending, as no one suggests they would not receive the full terms of the contracts under the procurement if they ultimately prevail.

issue a new injunction continuing or maintaining the trial court's temporary injunction, to remain in effect until disposition of this appeal. The Children's Plans further request all other relief to which they are entitled.

Respectfully submitted,

/s/ *Warren S. Huang*

Susan Feigin Harris
susan.harris@nortonrosefulbright.com
Warren S. Huang
warren.huang@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US, LLP
1550 Lamar, Suite 2000
Houston, Texas 77010
Telephone: (713) 651-5151

Paul Trahan
paul.trahan@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US, LLP
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701
Telephone: (512) 474-5201

Thomas A. Coulter
tom.coulter@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US, LLP
799 9th Street, NW, Suite 1000
Washington, D.C. 20001
Telephone: (202) 662-0200

**COUNSEL FOR PLAINTIFF TEXAS CHILDREN'S HEALTH PLAN**

/s/ *Amy Warr*

Amy Warr
State Bar No. 00795708
awarr@adjtlaw.com
Anna M. Baker
State Bar No. 00791362
abaker@adjtlaw.com
ALEXANDER DUBOSE & JEFFERSON LLP
100 Congress Avenue, Suite 1450
Austin, Texas 78701-2709
Telephone: (512) 482-9300
Facsimile: (512) 482-9303

Karen C. Burgess
kburgess@burgesslawpc.com
Katie Dolan-Galaviz
kgalaviz@burgesslawpc.com
BURGESS LAW PC
404 West 13th Street
Austin, Texas 78701-1825
Telephone: (512) 482-8808

Matthew P. Gordon
mgordon@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: (206) 359.8000

**COUNSEL FOR PLAINTIFF COOK CHILDREN'S HEALTH PLAN**

**CERTIFICATE OF SERVICE**

I hereby certify that on September 24, 2025, a true and correct copy of Rule 29.3 Reply of Appellees Cook Children's Health Plan and Texas Children's Health Plan was served via electronic service on all parties through counsel of record, listed below:

Ken Paxton
Attorney General of Texas
Brent Webster
First Assistant Attorney General
William R. Peterson
Solicitor General
William F. Cole
Principal Deputy Solicitor General
william.cole@oag.texas.gov
Cory A. Scanlon
Assistant Solicitor General
cory.scanlon@oag.texas.gov
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas 78711-25848

**COUNSEL FOR APPELLANT CECILE ERWIN YOUNG, IN HER OFFICIAL CAPACITY AS EXECUTIVE COMMISSIONER OF THE TEXAS HEALTH AND HUMAN SERVICES COMMISSION**

Cheryl Joseph LaFond
clafond@scottdoug.com
Jason LaFond
jlafond@scottdoug.com
SCOTT, DOUGLASS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, Texas 78701

**COUNSEL FOR MOLINA HEALTHCARE OF TEXAS, INC.**

Joseph R. Knight
jknight@ebbklaw.com
EWELL, BROWN, BLANKE & KNIGHT LLP
111 Congress Avenue, Suite 2800
Austin, Texas 78701

Mark J. Kessler
*Admission Pro Hac Vice*
mkessler@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
41 South High Street, Suite 1800
Columbus, Ohio 43215-6106

**COUNSEL FOR AETNA BETTER HEALTH OF TEXAS, INC.**

51

Robert F. Johnson III
rjohnson@foley.com
FOLEY & LARDNER LLP
600 Congress Avenue, Suite 3000
Austin, Texas. 78701
Telephone: (512) 542-7000

Michelle Y. Ku
mku@foley.com
Stacy R. Obenhaus
sobenhaus@foley.com
FOLEY & LARDNER LLP
2021 McKinney, Suite 1600
Dallas, Texas 75201

Benjamin J. Grossman
*Of Counsel*
bjgrossman@foley.com
FOLEY & LARDNER LLP
106 East College Avenue, Suite 900
Tallahassee, Florida 32301

**COUNSEL FOR APPELLEE WELLPOINT INSURANCE COMPANY**

Richard B. Phillips, Jr.
rich.phillips@hklaw.com
HOLLAND & KNIGHT LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201

Karen D. Walker
*Admission Pro Hac Vice*
karen.walker@hklaw.com
Tiffany Roddenberry
*Admission Pro Hac Vice*
tiffany.roddenberry@hklaw.com
HOLLAND & KNIGHT LLP
315 South Calhoun Street, Suite 600
Tallahassee, Florida 32301

**COUNSEL FOR APPELLEE SUPERIOR HEALTH PLAN, INC.**

/s/ *Warren S. Huang*
Warren S. Huang

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Warren Huang on behalf of Warren Huang
Bar No. 796788
warren.huang@nortonrosefulbright.com
Envelope ID: 106043203
Filing Code Description: Response
Filing Description: Response
Status as of 9/24/2025 4:41 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Michaelle Peters | | mpeters@scottdoug.com | 9/24/2025 4:30:05 PM | SENT |
| Julie Wright | | julie.wright@nortonrosefulbright.com | 9/24/2025 4:30:05 PM | SENT |
| Amanda DoddsPrice | | amanda.price@squirepb.com | 9/24/2025 4:30:05 PM | SENT |
| Mandy Patterson | | mpatterson@adjtlaw.com | 9/24/2025 4:30:05 PM | SENT |
| Michelle Joyner | | mjoyner@scottdoug.com | 9/24/2025 4:30:05 PM | SENT |
| William FCole | | William.Cole@oag.texas.gov | 9/24/2025 4:30:05 PM | SENT |
| Abril Rivera | | arivera@scottdoug.com | 9/24/2025 4:30:05 PM | SENT |
| Nancy Villarreal | | nancy.villarreal@oag.texas.gov | 9/24/2025 4:30:05 PM | SENT |
| Maria Williamson | | maria.williamson@oag.texas.gov | 9/24/2025 4:30:05 PM | SENT |
| Jessie Johnson | | jessie.johnson@nortonrosefulbright.com | 9/24/2025 4:30:05 PM | SENT |
| Cory Scanlon | | cory.scanlon@oag.texas.gov | 9/24/2025 4:30:05 PM | SENT |
| David Johns | | david@cobbjohns.com | 9/24/2025 4:30:05 PM | SENT |
| Stacey Jett | | sjett@adjltaw.com | 9/24/2025 4:30:05 PM | SENT |

Associated Case Party: Cook Children's Health Plan

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Karen Burgess | 796276 | kburgess@burgesslawpc.com | 9/24/2025 4:30:05 PM | SENT |
| Anna Baker | 791362 | abaker@adjtlaw.com | 9/24/2025 4:30:05 PM | SENT |
| Amy Warr | 795708 | awarr@adjtlaw.com | 9/24/2025 4:30:05 PM | SENT |
| Juliana Bennington | | jbennington@perkinscoie.com | 9/24/2025 4:30:05 PM | SENT |
| Jonathan Hawley | | jhawley@perkinscoie.com | 9/24/2025 4:30:05 PM | ERROR |
| Trisha Marino | | tmarino@perkinscoie.com | 9/24/2025 4:30:05 PM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Warren Huang on behalf of Warren Huang
Bar No. 796788
warren.huang@nortonrosefulbright.com
Envelope ID: 106043203
Filing Code Description: Response
Filing Description: Response
Status as of 9/24/2025 4:41 PM CST

Associated Case Party: Cook Children's Health Plan

| Trisha Marino | | tmarino@perkinscoie.com | 9/24/2025 4:30:05 PM | SENT |
|---|---|---|---|---|
| Katie Dolan-Galaviz | | kgalaviz@burgesslawpc.com | 9/24/2025 4:30:05 PM | SENT |
| Perkins Docketing Team | | DocketSEA@perkinscoie.com | 9/24/2025 4:30:05 PM | SENT |
| Matthew Gordon | | mgordon@perkinscoie.com | 9/24/2025 4:30:05 PM | SENT |

Associated Case Party: Wellpoint Insurance Company

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Robert Johnson | 10786400 | rjohnson@foley.com | 9/24/2025 4:30:05 PM | SENT |
| Michelle Ku | 24071452 | mku@foley.com | 9/24/2025 4:30:05 PM | SENT |
| Kristin Hernandez | | kristin.hernandez@foley.com | 9/24/2025 4:30:05 PM | SENT |
| Stacey Obenhaus | | sobenhaus@foley.com | 9/24/2025 4:30:05 PM | SENT |
| Benjamin Grossman | | bjgrossman@foley.com | 9/24/2025 4:30:05 PM | SENT |

Associated Case Party: Superior Healthplan Inc.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Richard Phillips | 24032833 | Rich.Phillips@hklaw.com | 9/24/2025 4:30:05 PM | SENT |
| J McCaig | 24070083 | meghan.mccaig@outlook.com | 9/24/2025 4:30:05 PM | SENT |
| Karen Walker | | karen.walker@hklaw.com | 9/24/2025 4:30:05 PM | SENT |
| Tiffany Roddenberry | | tiffany.roddenberry@hklaw.com | 9/24/2025 4:30:05 PM | SENT |

Associated Case Party: Aetna Better Health of Texas, Inc.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Warren Huang on behalf of Warren Huang
Bar No. 796788
warren.huang@nortonrosefulbright.com
Envelope ID: 106043203
Filing Code Description: Response
Filing Description: Response
Status as of 9/24/2025 4:41 PM CST

Associated Case Party: Aetna Better Health of Texas, Inc.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Joseph Knight | 11601275 | jknight@ebbklaw.com | 9/24/2025 4:30:05 PM | SENT |

Associated Case Party: Texas Health and Human Services

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Victoria Gomez | | victoria.gomez@oag.texas.gov | 9/24/2025 4:30:05 PM | SENT |
| Jennifer Cook | | Jennifer.Cook@oag.texas.gov | 9/24/2025 4:30:05 PM | SENT |

Associated Case Party: Texas Children's Health Plan

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Warren Huang | 796788 | warren.huang@nortonrosefulbright.com | 9/24/2025 4:30:05 PM | SENT |
| Paul Trahan | 24003075 | paul.trahan@nortonrosefulbright.com | 9/24/2025 4:30:05 PM | SENT |
| Susan Harris | 6876980 | susan.harris@nortonrosefulbright.com | 9/24/2025 4:30:05 PM | SENT |
| Kayla Ahmed | | kayla.ahmed@nortonrosefulbright.com | 9/24/2025 4:30:05 PM | SENT |
| Thomas Coulter | 4885500 | tom.coulter@nortonrosefulbright.com | 9/24/2025 4:30:05 PM | SENT |

Associated Case Party: Molina Healthcare of Texas, Inc.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Cheryl LaFond | 24104015 | clafond@scottdoug.com | 9/24/2025 4:30:05 PM | SENT |
| Jason R.LaFond | | jlafond@scottdoug.com | 9/24/2025 4:30:05 PM | SENT |

Associated Case Party: Cecile Erwin Young, Texas Health and Human Services

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Warren Huang on behalf of Warren Huang
Bar No. 796788
warren.huang@nortonrosefulbright.com
Envelope ID: 106043203
Filing Code Description: Response
Filing Description: Response
Status as of 9/24/2025 4:41 PM CST

Associated Case Party: Cecile Erwin Young, Texas Health and Human Services

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|---------------------|--------|
| Cory Scanlon | 24104599 | cory.scanlon@oag.texas.gov | 9/24/2025 4:30:05 PM | SENT |
| Jeffrey Stephens | | jeff.stephens@oag.texas.gov | 9/24/2025 4:30:05 PM | SENT |